UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

RAYDENE CHRISTIAN                                              Case No. 16-21260-LMI

                                                                                                        Chapter 7

     Debtor.
_____/

MULTIBANK 2009-1 RES-ADC                                    Adv. No.
VENTURE, LLC

     Plaintiff,

v.

RAYDENE CHRISTIAN,

     Defendant.
_____/

## COMPLAINT TO DENY DISCHARGE

MULTIBANK 2009-1 RES-ADC VENTURE, LLC (the "Plaintiff") brings this action against Raydene Christian (the "Debtor") pursuant to Section 727 of title 11 of the United States Code (the "Bankruptcy Code") and states as follows.

### Parties, Jurisdiction And Venue

1. This is an adversary proceeding brought pursuant to Fed.R.Bank.P. 7001(4) and 11 U.S.C. §727(a) seeking to deny the discharge of the Debtor.

2. The Debtor is currently a debtor under chapter 7 of the Bankruptcy Code under case number 16-21260-LMI, pending before the Hon. Judge Laurel M.

Isicoff, of the Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

3. This is a statutorily core matter pursuant to 28 U.S.C. § 157(b)(2)(J).

4. The Bankruptcy Court has jurisdiction pursuant 28 U.S.C. § 1334(b).

5. This matter arises in a bankruptcy case and arises under the Bankruptcy Code.

6. Venue is proper pursuant to 28 U.S.C. § 1409.

7. The determination of this matter is a public right, and the Bankruptcy Court may constitutionally hear, determine and enter final orders on all matters that arise herein.

## General Allegations

*The Debtor's repeated filings and lack of candor evidence an unwillingness to properly disclose and dedicate her projected <u>disposable income to repayment of her creditors.</u>*

8. On February 16, 2016, the Circuit Court of the 11th Judicial District (the "State Court") in and for Miami-Dade County entered a final judgment (the "Final Judgment") against the Debtor in the amount of $131,208.21.

9. On February 18, 2016. The Debtor filed a case under chapter 7 as case number 16-12266 (the "February Case").

10. On line 16B of her petition in the February Case, the Debtor indicated her debts were primarily consumer debts.

11. On line 2 of Schedule I to her petition in the February Case, the Debtor indicated her gross monthly income to be $10,329.00.

12. Accordingly, at the time she filed the February Case, the Debtor was a primarily consumer debtor with an income above the median for the state of Florida.

13. On February 18, 2016, the Debtor filed her Chapter 7 Means Test Calculation (the "February Case Means Test Calculation").

14. The February Case Means Test Calculation set forth that

   a. the Debtor's current monthly income was $9,787.64;

   b. the Debtor's deductions totaled $10,037.24

   c. the Debtor's monthly disposable income was -$249.60;

   d. the Debtor's monthly disposable income multiplied by 60 (the "Projected Disposable Income") was thus negative; and

   e. therefore, no presumption of abuse attached because the Projected Disposable Income was less than $7,700.00.

15. Despite clear language on the instructions on line 29 which read:

> **Education expenses for dependent children who are younger than 18.** The monthly expenses (not more than $156.25* per child) that you pay for your dependent children who are younger than 18 years old to attend a private or public elementary or secondary school[,]

the Debtor claimed a $1,330.00 deduction on line 29.

16. Had the Debtor claimed $156.25 on line 29, her deductions would have totaled $8,863.49.

17. Thus, had the Debtor not claimed $1,330.00 in clear violation of the instructions, the Debtor's monthly disposable income would have totaled $924.15, for a projected disposable income of $55,449.00.

18.     As such, the presumption of abuse attached to the filing of the February Case.

19.     On March 2, 2016, the Plaintiff moved to dismiss the February Case under 11 U.S.C. § 707(a) and 707(b).

20.     On March 7, 2016, the United States Trustee moved to dismiss the case under 11 U.S.C. § 707(b).

21.     On March 8, 2016 the Debtor entered into an agreed order with her counsel to convert the case to chapter 13.

22.     Despite income in excess of $10,000 per month, the Debtor proposed payments of only between $3,500 and $14,000 over the life of two filed plans.

23.     On, May 24, 2016, the Chapter 13 trustee filed a notice of deficiency for confirmation, noting:

> Debtor failed to provide/file: a) did not file B22C-2 dismissal pursuant to 521 necessary, b) income of all adults not provided on B22C-1, c) WDO or motion to waive, d) explain withdrawal from Acct 4541 on 12/28/15 of $3000, 1/7 of $2500, e) explain $2000 purchase at Home depot, f) debtor is transferring large sums of money to bank accounts not disclosed on Sch B (#8354, #0362, and #2218) who is the owner of these accounts, g) Bank statement #6849 (12/8 -3/8/16) h) objection to Sch I and J expenses including gift monthly to family member for car, cafeteria, taxes (as amount withheld not incurred), charity (without evidence on taxes),and 2 vehicle loans - one person working,

24.     On May 31, 2016, the Plaintiff objected to plan confirmation.

25.     On June 15, 2016, the February Case was dismissed.

26.     In response to service of writs of garnishment, on July 28, 2016, the Debtor filed motion to shorten the prejudice period.

27. On August 11, 2016, the Court entered an Order entered shortening the period.

28. On August 16, 2016, the Debtor refiled under chapter 7, despite no material change in her presumption of abuse, as Case No. 16-21260 (the "August Case").

29. Once again, the Debtor admitted that her debts were primarily consumer debts.

30. On August 19, 2016, the Debtor filed her Emergency Motion to Impose the Automatic Stay (the "Motion to Impose").

31. The Motion to Impose was set for hearing on September 12, 2016.

32. On August 19, 2016, the Debtor filed her Chapter 7 Means Test Calculation (the "Means Test Calculation").

33. The Means Test Calculation set forth that

   a. the Debtor's current monthly income is $8,140.93;

   b. the Debtor's deductions total $8,019.43;

   c. the Debtor's monthly disposable income is $121.50;

   d. the Debtor's monthly disposable income multiplied by 60 (the "Projected Disposable Income") is thus $7,290; and

   e. therefore, no presumption of abuse attaches because the Projected Disposable Income is less than $7,700.00.

34. On September 14, 2016, two days after the hearing on the Motion to Impose, that the Debtor amended her Schedule I to reflect a Current Monthly Income of $8,951.26 (an increase of $810.33 per month).

35. The Debtor did not file an amended Means Test Calculation at that time.

36. Had the Debtor done so, the increase in current monthly income would have increased her monthly disposable income to $931.83, and her Projected Disposable Income would have totaled $55,909.80.

37. Obviously, had the Debtor filed an amended Means Test Calculation, it would have evinced a presumption of abuse.

38. Had the Debtor filed an accurate Schedule I and Means Test Calculation prior to the hearing on the Motion to Impose, upon information and belief, the Court would not have imposed the automatic stay.

39. The Debtor has repeatedly refused to file accurate statements accounting for her Projected Disposable Income, in an effort to obtain relief to which she knows she is not entitled.

> *The Debtor has inflated her claimed dependents to attempt to obtain <u>relief to which she is not entitled.</u>*

40. On her 2014 tax return filed with the Internal Revenue Service, the Debtor claimed no dependents (resulting in a household size of one).

41. On her 2015 tax return filed with the Internal Revenue Service, the Debtor claimed one dependent (resulting in a household size of two).

42. In the February Case, despite reflecting only one dependent on her tax return, the Debtor claimed a household size of three.

43. In the August Case, despite reflecting only one dependent on her tax return, the Debtor claimed a household size of four.

44. Presumably, the debtor inflated the size of her household in an attempt to increase deductions, as part of a scheme to avoid the clear presumption of abuse.

45. The Debtor indicated at her §341 meeting that the increased household size included her parents.

46. When asked if her parents earned income, the Debtor responded:

> Q. How much money do they earn?
> A. Nothing.

47. This, however, is false. Upon being pressed, the Debtor admitted:

> Q. They don't work at Publix?
> A. $100 a week.

48. Such distinction is material, because $100 per week in income (approximately $5,200 per year) would render the Debtor unable to claim such individuals as dependents, as such characterization is impermissible for individuals earning more the $3,900 per year.

49. Tellingly, the Debtor did not report the income earned by her parents as household income on any of her filings in the February Case or August Case.

*The Debtor has repeatedly hidden her interest in real property in <u>Carroll County, Georgia.</u>*

50.   On February 24, 2006 Barry Wigington executed a quitclaim deed in favor of Dale E. Christian for the property described as:

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 18 OF THE 5TH DISTRICT, 5TH SECTION OF CARROLL COUNTY, GEORGIA, BEING LOT 471, FAIRFIELD PLANTATION, SECTION 2, AS PER PLAT RECORDED IN PLAT BOOK 12, PAGE 5, CARROLL COUNTY, GEORGIA RECORDS WHICH PLAT IS HEREBY REFERRED TO AND MADE A PART OF THIS DESCRIPTION.

(the "Wigington Property"). Such deed is recorded at page 261, book 3467 of the official records of Carroll County, GA.

51.   That same day, Dale E. Christian executed a quitclaim deed in favor of Dale E. Christian and the Debtor for the Wigington Property. Such deed is recorded at page 284, book 3467 of the official records of Carroll County, GA.

52.   On May 9, 2013, Alton J. Dinsmore and Julia C. Dinsmore executed a quitclaim deed in favor of Dale E. Christian and the Debtor as to:

> ALL THAT CERTAIN TRACK OF LAND DESIGNATED AS LOT NO. 470 SECTION NO.2 (SAID SECTION BEING DESIGNATED THE HERMITAGE SECTION IN THE TREASURE LAKE SUBDIVISION OF CARROLL COUNTY, GEORGIA, AS IT IS SHOWN AND DELINEATED ON A PLAT OF SAID SECTION AND SUBDIVISION, APPEARING OF RECORD IN PLAT BOOK 12, PAGE 5, IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF CARROLL COUNTY, GEORGIA, WHICH PLAT AND THE RECORD THEREOF ARE SPECIFICALLY BY REFERENCE INCORPORATED HEREIN FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY.

(the "Dinsmore Property"). Such deed is recorded at page 641, book 5262 of the official records of Carroll County, GA.

53. Upon information and belief, the Dinsmore Property and Wigington Property are adjoining lots (with improvements on one or both), with an address of 2471 Briarwood Court, Villa Rica, Georgia 30180.

54. Accordingly, the Dinsmore Property and Wigington Property are collectively referred to as the "Briarwood Property."

55. The official records of Carroll County, GA continue to evidence that the Debtor owns (jointly with Dale E. Christian) the Briarwood Property.

56. In neither the schedules filed in connection with the February Case nor the August Case did the Debtor disclose any interest in the Briarwood Property.

57. At her §341 meeting, the Debtor testified:

> **Q. What happened to the property at 2471 Briarwood Court in Georgia?**
>
> **A. That is not my properties. That my sister's property.**
>
> **Q. Okay, but is it in your name also?**
>
> **A. I don't think so. When we first purchased it it was, but then we did a quick deed after . . . 2008 or something . . . In 2008 she got out of this house because she purchased the one in Villa Rica. So the Villa Rica one became her house and the Miami one is my house, and that's why. . . . .**
>
> **Q. Okay. Well, what is Fairfield POA in Villa Rica, Georgia?**
>
> **A. Okay. As I told you, my sister and I ---**
>
> **Q. Just tell me what POA in Villa ---**
>
> **A. That's for my sister's house in Georgia,the association fees. . . .**
>
> **Q. Okay. Why are you paying for your sister's association?**

```
A. Because she -- she was kind of careless with
   payments. So I always pay her bill, and she
   always give me the money to pay her bills.
```

58. Despite being a record owner and regularly paying the carrying costs for the Briarwood Property, the Debtor did not list the Briarwood Property on her schedules filed in either case.

> *While the February Case was pending, the Debtor repaid an undisclosed $3,600 prepetition debt to her cousin, which she did not <u>disclose in her filings in the August Case.</u>*

59. The Debtor asserts that her cousin loaned her $3,600 in January 2016 (the "Family Debt").

60. In her schedules D, E, and F in the February Case, the alleged Family Debt is not listed.

61. On March 28, 2016, the Debtor was served by the Plaintiff with a Notice of Examination under Fed. R. Bankr. P. 2004.

62. That same day, the Debtor transferred (the "Insider Transfer") $3,600 to her cousin.

63. The Insider Transfer was a transfer to an insider, as that term is defined in section 101 of the Bankruptcy Code.

64. The Insider Transfer was a transfer of property of the estate, after the filing of the petition in the February Case.

65. The Insider Transfer was made during a time in which the Debtor was a debtor under chapter 13 of the Bankruptcy Code.

66. The Insider Transfer was made with the intent to hinder, delay, or defraud the Plaintiff and/or the February Case chapter 13 trustee.

67.   In her Statement of Financial Affairs in the August Case, the Debtor provided as follows:

> Case 16-21260-LMI   Doc 8   Filed 08/19/16   Page 36 of 40
>
> 8/19/16 3:13PM
>
> Debtor 1   Raydene Y Christian    Case number (if known) 16-21260
>
> 7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
> *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.
>
> ■ No
> ☐ Yes. List all payments to an insider.
>
> | Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
> |---|---|---|---|---|
>
> 8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
> Include payments on debts guaranteed or cosigned by an insider.
>
> ■ No
> ☐ Yes. List all payments to an insider
>
> | Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
> |---|---|---|---|---|

68.   Accordingly, the Debtor did not disclose the Family Debt, and did not disclose the Insider Transfer.

69.   Based on the Debtor's pattern of nondisclosure and underdisclosure, such nondisclosures were made with the intent to hinder, delay, or defraud the Plaintiff, the August Case chapter 7 trustee, the United States Trustee, or the Court.

70.   At her §341 meeting, the Debtor testified:

> **Q. Now, you transferred $3,600 to an account ending 7146. Whose account is that?**
>
> **A. That was my cousin's account.**
>
> **Q. Okay. So on March 28th you transferred $3,600 to your cousin?**
>
> **A. Correct.**
>
> **Q. Why?**
>
> **A. Because he loaned me that money --**

**Q. Okay.**

**A. -- in January.**

71. Despite being called out for the Insider Transfer, the Debtor did not amend her Statement of Financial Affairs.

Count I
Denial of Discharge
11 U.S.C. § 727(a)(2)(A)
Insider Transfer

72. Plaintiff realleges and reincorporates the allegations in paragraphs 1 through 71 as if fully set forth herein.

73. The Insider Transfer was a transfer of an interest of the Debtor in property made within one year of the filing of the petition in the August Case.

74. Considering the Debtor's pattern of nondisclosure and underdisclosure of financial conditions related to her and her family, such transfer was made with the intent to hinder, delay or defraud Plaintiff or an officer of the estate charged with custody of property.

75. The Debtor concealed such transfer by not reporting such transfer on her Statement of Financial Affairs filed in the August Case.

Wherefore, the Plaintiff requests this Court enter judgment denying the Debtor's discharge, and granting such other and further relief as is just and appropriate.

## Count II
## Denial of Discharge
## 11 U.S.C. § 727(a)(7)
## Insider Transfer

76. Plaintiff realleges and reincorporates the allegations in paragraphs 1 through 71 as if fully set forth herein.

77. The Insider Transfer was a transfer of an interest of the February Case chapter 13 estate in property made after the filing of the petition in such case.

78. The Debtor has committed an act under 11 U.S.C. § 727(a)(2)(B), within one year before the date of the filing of the petition in the August Case in connection with another case, concerning an insider.

79. Considering the Debtor's pattern of nondisclosure and underdisclosure of financial conditions related to her and her family, such transfer was made with the intent to hinder, delay or defraud Plaintiff or an officer of the estate charged with custody of property.

80. The Debtor concealed such transfer by not reporting such transfer on her Statement of Financial Affairs filed in the August Case.

Wherefore, the Plaintiff requests this Court enter judgment denying the Debtor's discharge, and granting such other and further relief as is just and appropriate.

## Count III
## Denial of Discharge
## 11 U.S.C. § 727(a)(4)
## Nondisclosure of Insider Transfer

81. Plaintiff realleges and reincorporates the allegations in paragraphs 1 through 71 as if fully set forth herein.

82. The Insider Transfer was a repayment of a debt to an insider within one year of the filing of the August Case.

83. Considering the Debtor's pattern of nondisclosure and underdisclosure of financial conditions related to her and her family, the Debtor knowingly and fraudulently made a false oath in falsely not reporting such transfer on her Statement of Financial Affairs filed in the August Case.

Wherefore, the Plaintiff requests this Court enter judgment denying the Debtor's discharge, and granting such other and further relief as is just and appropriate.

## Count IV
## Denial of Discharge
## 11 U.S.C. § 727(a)(4) and 727(a)(7)
## Nondisclosure of Briarwood Property

84. Plaintiff realleges and reincorporates the allegations in paragraphs 1 through 71 as if fully set forth herein.

85. The Debtor has repeatedly concealed her interest in the Briarwood Property apparently in an attempt to protect her sister.

86. Considering the Debtor's pattern of nondisclosure and underdisclosure of financial conditions related to her and her family, the Debtor knowingly and fraudulently made a false oath in falsely not reporting such interest on her schedule A of either case.

87. The nondisclosure in the February Case was a false oath within one year before the date of the filing of the petition in the August Case in connection with another case, concerning an insider.

Wherefore, the Plaintiff requests this Court enter judgment denying the Debtor's discharge, and granting such other and further relief as is just and appropriate.

### Count V
### Denial of Discharge
### 11 U.S.C. § 727(a)(4) and 727(a)(7)
### False Oaths Related to Projected Disposable Income

88. Plaintiff realleges and reincorporates the allegations in paragraphs 1 through 71 as if fully set forth herein.

89. The allegations in paragraphs 10 through 49 are collectively referred to as the "Income Misrepresentations."

90. The Income Misrepresentations collectively evidence false oaths.

91. Upon information and belief, such false oaths were knowingly and fraudulently designed to deflate income, inflate expenses, and inflate dependents, such that the Debtor could qualify for a chapter 7, or qualify for lower monthly payments in a chapter 13.

92. Considering the Debtor's pattern of nondisclosure and underdisclosure of financial conditions related to her and her family, the Debtor knowingly and fraudulently made such false oaths.

93. The Income Misrepresentations in the February Case were false oaths within one year before the date of the filing of the petition in the August Case in connection with another case, concerning an insider.

Wherefore, the Plaintiff requests this Court enter judgment denying the Debtor's discharge, and granting such other and further relief as is just and appropriate.

                                                  Respectfully submitted,

                                                  /s/ Lawrence E. Pecan
                                                  Lawrence E. Pecan, Esquire
                                                  Florida Bar No. 99086
                                                  In-House Counsel
                                                  Rialto Capital
                                                  790 NW 107 Avenue, Suite 400
                                                  Miami, Florida 33172
                                                  Lawrence.Pecan@rialtocapital.com