UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 16-21260-LMI |
| | Chapter 7 |
| RAYDENE CHRISTIAN, | |
|     Debtor. | |
| _____/ | |
| MULTIBANK 2009-1 RES-ADC VENTURE LLC, | Adv. Pro. No. 16−01544−LMI |
|     Plaintiff, | |
| v. | |
| RAYDENE CHRISTIAN, | |
|     Defendant. | |
| _____/ | |

## JOINT PRETRIAL STIPULATION

The parties hereby stipulate as follows:

1. The Debtor is currently a debtor under chapter 7 of the Bankruptcy Code under case number 16-21260-LMI, pending before the Hon. Judge Laurel M. Isicoff, of the Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

2. On February 18, 2016. The Debtor filed a case under chapter 7 as case number 16-12266 (the "February Case").

3. On line 2 of Schedule I to her petition in the February Case, the Debtor indicated her gross monthly income to be $10,329.00.

4. On February 18, 2016, the Debtor filed her Chapter 7 Means Test Calculation (the "February Case Means Test Calculation").

5. The February Case Means Test Calculation set forth that

   a. the Debtor's current monthly income was $9,787.64;

   b. the Debtor's deductions totaled $10,037.24

   c. the Debtor's monthly disposable income was -$249.60;

   d. the Debtor's monthly disposable income multiplied by 60 (the "Projected Disposable Income") was thus negative; and

   e. therefore, no presumption of abuse attached because the Projected Disposable Income was less than $7,700.00.

6. The Debtor claimed a $1,330.00 deduction on line 29.

7. On March 2, 2016, the Plaintiff moved to dismiss the February Case under 11 U.S.C. § 707(a) and 707(b).

8. On March 7, 2016, the United States Trustee moved to dismiss the case under 11 U.S.C. § 707(b).

9. On March 8, 2016 the Debtor entered into an agreed order to convert the case to chapter 13.

10. In the February Case, the Debtor's currently monthly income calculation evinced income of greater than $10,000.00 per month.

11. The Debtor proposed payments of only between $3,500 and $14,000 over the life of two filed plans.

12. On, May 24, 2016, the Chapter 13 trustee filed a notice of deficiency for confirmation, noting:

> Debtor failed to provide/file: a) did not file B22C-2 dismissal pursuant to 521 necessary, b) income of all adults not provided on B22C-1, c) WDO or motion to waive, d) explain withdrawal from Acct 4541 on 12/28/15 of $3000, 1/7 of $2500, e) explain $2000 purchase at Home depot, f) debtor is transferring large sums of money to bank accounts not disclosed on Sch B (#8354, #0362, and #2218) who is the owner of these accounts, g) Bank statement #6849 (12/8 -3/8/16) h) objection to Sch I and J expenses including gift monthly to family member for car, cafeteria, taxes (as amount withheld not incurred), charity (without evidence on taxes),and 2 vehicle loans - one person working,

13. On May 31, 2016, the Plaintiff objected to plan confirmation.

14. On June 15, 2016, the February Case was dismissed.

15. On July 28, 2016, the Debtor filed motion to shorten the prejudice period.

16. On August 11, 2016, the Court entered an Order entered shortening the period.

17. On August 16, 2016, the Debtor refiled under chapter 7, as Case No. 16-21260 (the "August Case").

18. On August 19, 2016, the Debtor filed her Emergency Motion to Impose the Automatic Stay (the "Motion to Impose").

19. The Motion to Impose was set for hearing on September 12, 2016.

20. On August 19, 2016, the Debtor filed her Chapter 7 Means Test Calculation (the "Means Test Calculation").

21. The Means Test Calculation set forth that

    a. the Debtor's current monthly income is $8,140.93;

    b. the Debtor's deductions total $8,019.43;

    c. the Debtor's monthly disposable income is $121.50;

    d. the Debtor's monthly disposable income multiplied by 60 (the "Projected Disposable Income") is thus $7,290; and

    e. therefore, no presumption of abuse attaches because the Projected Disposable Income is less than $7,700.00.

22. On September 14, 2016, two days after the hearing on the Motion to Impose, that the Debtor amended her Schedule I to reflect a Current Monthly Income of $8,951.26 (an increase of $810.33 per month).

23. The Debtor did not file an amended Means Test Calculation at that time.

24. On her 2014 tax return filed with the Internal Revenue Service, the Debtor claimed no dependents.

25. On her 2015 tax return filed with the Internal Revenue Service, the Debtor claimed one dependent.

26. In the February Case, the Debtor claimed a household size of three, herself, plus two dependents.

27. In the August Case, the Debtor claimed a household size of four, herself, plus three dependents.

28. The Debtor indicated at her §341 meeting that the increased household size included her parents.

29. When asked if her parents earned income, the Debtor responded:

> **Q. How much money do they earn?**
>
> **A. Nothing.**

30. When asked if they worked at Publix, the Debtor stated:

> **Q. They don't work at Publix?**
>
> **A. $100 a week.**

31. On February 24, 2006 Barry Wigington executed a quitclaim deed in favor of Dale E. Christian for the property described as:

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 18 OF THE 5TH DISTRICT, 5TH SECTION OF CARROLL COUNTY, GEORGIA, BEING LOT 471, FAIRFIELD PLANTATION, SECTION 2, AS PER PLAT RECORDED IN PLAT BOOK 12, PAGE 5, CARROLL COUNTY, GEORGIA RECORDS WHICH PLAT IS HEREBY REFERRED TO AND MADE A PART OF THIS DESCRIPTION.

(the "Wigington Property"). Such deed is recorded at page 261, book 3467 of the official records of Carroll County, GA.

32. That same day, Dale E. Christian executed a quitclaim deed in favor of Dale E. Christian and the Debtor for the Wigington Property. Such deed is recorded at page 284, book 3467 of the official records of Carroll County, GA.

33. On May 9, 2013, Alton J. Dinsmore and Julia C. Dinsmore executed a quitclaim deed in favor of Dale E. Christian and the Debtor as to:

> ALL THAT CERTAIN TRACK OF LAND DESIGNATED AS LOT NO. 470 SECTION NO.2 (SAID SECTION BEING DESIGNATED THE HERMITAGE SECTION IN THE TREASURE LAKE SUBDIVISION OF CARROLL COUNTY, GEORGIA, AS IT IS SHOWN AND DELINEATED ON A PLAT OF SAID SECTION AND SUBDIVISION, APPEARING OF RECORD IN PLAT BOOK 12, PAGE 5, IN THE OFFICE OF THE CLERK OF

> THE SUPERIOR COURT OF CARROLL COUNTY, GEORGIA, WHICH PLAT AND THE RECORD THEREOF ARE SPECIFICALLY BY REFERENCE INCORPORATED HEREIN FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY.

(the "Dinsmore Property"). Such deed is recorded at page 641, book 5262 of the official records of Carroll County, GA.

34. The Dinsmore Property and Wigington Property are adjoining lots (with improvements on one or both), with an address of 2471 Briarwood Court, Villa Rica, Georgia 30180.

35. Accordingly, the Dinsmore Property and Wigington Property are collectively referred to as the "Briarwood Property."

36. The official records of Carroll County, GA continue to evidence that the Debtor owns (jointly with Dale E. Christian) the Briarwood Property.

37. The Debtor maintains that the Debtor's interest was transferred to her sister via a deed which was never recorded (the "Failed Deed").

38. The Failed Deed is not recorded in the public records of any county.

39. In neither the schedules filed in connection with the February Case nor the August Case did the Debtor claim any interest in the Briarwood Property.

40. At her §341 meeting, the Debtor testified:

> **Q. What happened to the property at 2471 Briarwood Court in Georgia?**
>
> **A. That is not my properties. That my sister's property.**
>
> **Q. Okay, but is it in your name also?**
>
> **A. I don't think so. When we first purchased it it was, but then we did a quick deed after . .**

>. 2008 or something . . . In 2008 she got out
> of this house because she purchased the one in
> Villa Rica. So the Villa Rica one became her
> house and the Miami one is my house, and
> that's why. . . . .
>
> Q. Okay. Well, what is Fairfield POA in Villa
>    Rica, Georgia?
>
> A. Okay. As I told you, my sister and I ---
>
> Q. Just tell me what POA in Villa ---
>
> A. That's for my sister's house in Georgia, the
>    association fees. . . .
>
> Q. Okay. Why are you paying for your sister's
>    association?
>
> A. Because she -- she was kind of careless with
>    payments. So I always pay her bill, and she
>    always give me the money to pay her bills.

41. At an examination under Rule 2004, when asked about the Briarwood Property, the Debtor testified as follows:

> Q  Do you make any payments towards the mortgage
>    on that property?
>
> A  No, I don't.
>
> Q  Do you make any payments towards the property
>    owners' association?
>
> A  No, I don't.
>
> Q  Do you make any payments for any of the
>    utilities, such as water, electric –
>
> A  I do not

42. The Debtor is named on account number 0014 6519 4541 (the "4541 Account) with Ivan Christian.

43. On February 1, 2014, the Debtor made a check No. 2162 from her 4541 Account to Carroll County Tax Office in the amount of $37.16. The check is signed by the Debtor.

44. The Debtor is named on account number 0034 4083 5450 (the "5450 Account") with ARLA D CHRISTIAN and DORILT HOOBERT CHRISTIEN.

45. Fairfield Plantation POA is the property owners association for the Briarwood Property.

46. On May 10, 2015, the Debtor wrote a check to Fairfield Plantation POA in the amount of $450.00 upon the 5450 Account as check number 2228.

47. On May 19, 2014, the Debtor wrote a check to Fairfield Plantation POA in the amount of $450.00 upon the 5450 Account as check number 2223. That memo of that check reads "2471 Briarwood Court."

48. For the past two years, all other mortgage and association payments for both the Debtor's home in Florida and the Briarwood Property were made from the 5450 Account via electronic bill payment.

49. The Debtor asserts that her cousin, Ivann Christian loaned her $3,600 in January 2016 (the "Family Debt").

50. In her schedules D, E, and F in the February Case, the Family Debt is not listed.

51. On March 28, 2016, the Debtor was served by the Plaintiff with a Notice of Examination under Fed. R. Bankr. P. 2004.

52. That same day, the Debtor transferred (the "Ivann Transfer") $3,600 to her cousin.

53. The Ivann Transfer was made during a time in which the Debtor was a debtor under chapter 13 of the Bankruptcy Code.

54. In her Statement of Financial Affairs in the August Case, the Debtor provided as follows:

> Case 16-21260-LMI    Doc 8    Filed 08/19/16    Page 36 of 40    8/19/16 3:13PM
>
> Debtor 1  Raydene Y Christian                              Case number (if known) 16-21260
>
> 7. Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?
> *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.
>
> ■ No
> ☐ Yes. List all payments to an insider.
>
> | Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
> |---|---|---|---|---|
>
> 8. Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?
> Include payments on debts guaranteed or cosigned by an insider.
>
> ■ No
> ☐ Yes. List all payments to an insider
>
> | Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
> |---|---|---|---|---|

55. At her §341 meeting, the Debtor testified:

> Q. Now, you transferred $3,600 to an account ending 7146. Whose account is that?
>
> A. That was my cousin's account.
>
> Q. Okay. So on March 28th you transferred $3,600 to your cousin?
>
> A. Correct.
>
> Q. Why?
>
> A. Because he loaned me that money --
>
> Q. Okay.
>
> A. -- in January.

56. After the §341 Meeting, the Debtor's Statement of Financial Affairs was amended to provide:

Debtor 1   Raydene Y Christian                                        Case number (if known) 16-21260

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
   *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

   ☐ No
   ■ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|
| Ivan Christian<br>1005 NW 105 Street,<br>Hialeah, FL 33015 | 05/2016 | $3,600.00 | $0.00 | |

57. At her §341 meeting, the Debtor testified:

> Q. Okay, and what happened to the 2009 Nissan Versa?
> A. That's my mom's car.
> Q. Your what?
> A. My mother's car.
> Q. Yes, but it's also --
> A. It's in joint.
> Q. -- in your name?
> A. It's joint.
> Q. Yes. Okay. Is there any debt on that car?
> A. No, that's paid off.
> Q. Okay. So that's a car that you have in your name and in your mom's name, right?
> A. Correct.
> Q. Do you know why you didn't disclose that car?
> A. Oh, I guess I probably overlooked ---
> Q. No, I don't want you to guess.

> **A. No, no, I'm just -- I probably overlooked it because I considered it her car.**
>
> **Q. Okay, but it's in your name also, right?**
>
> **A. It is registered in mine also.**

58. The Nissan Versa is not listed in the Debtor's Schedule A.in the February Case.

59. The Nissan Versa is not listed in the Debtor's original Schedule A in the August Case.

60. After the §341 Meeting, the Debtor's Schedule A was amended to provide:

| 3.3 | Make: | Nissan | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. | |
|---|---|---|---|---|---|
| | Model: | Versa | ■ Debtor 1 only | | |
| | Year: | 2009 | ☐ Debtor 2 only | Current value of the entire property? | Current value of the portion you own? |
| | Approximate mileage: | 48,721 | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | | ☐ At least one of the debtors and another | | |
| | VIN# 3N1BC11E49L351268. | | | | |
| | | | ☐ Check if this is community property (see instructions) | $3,300.00 | $1,650.00 |

                         Respectfully submitted,

                         /s/ Lawrence E. Pecan
                         Lawrence E. Pecan, Esquire
                         Florida Bar No. 99086
                         In-House Counsel
                         Rialto Capital
                         790 NW 107 Avenue, Suite 400
                         Miami, Florida 33172
                         Lawrence.Pecan@rialtocapital.com

                         /s/ Diego G. Mendez
                         Diego G. Mendez, Esq
                         FL Bar# 52748
                         Mendez Law Offices, PLLC
                         3750 NW 87th Ave Suite 280
                         Miami, FL 33178
                         Office: 305 264 9090
                         Email: info@mendezlawoffices.com
                         Fax: 1 305 809 8474